UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHANG LIM,

       Plaintiff Pro Se,

                                     Case No. 10-cv-14080

v.

                                     Paul D. Borman
                                     United States District Judge

CHISATO NOJIRI AND TERUMO
AMERICAS HOLDINGS, INC.,
KEITH PROCTOR, BILL PINON AND
TERUMO HEART, INC.,
GAEL TISACK AND TERUMO
CARDIOVASCULAR SYSTEMS,

       Defendants.
_____/

OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK
OF SUBJECT MATTER JURISDICTION (DKT. NO. 7)

       This matter is before the Court on Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction.  (Dkt. No. 7.)  Plaintiff has filed a Response (Dkt. No. 10) and Defendants have filed a Reply (Dkt. No. 12).  The Court held a hearing on March 16, 2011 and also received supplemental documentary evidence from Plaintiff and Defendants in support of their claims.  (Dkt. Nos. 36, 37.)  For the reasons that follow, the Court GRANTS Defendants' motion and DISMISSES Plaintiff's Complaint with prejudice.

**INTRODUCTION**

       Plaintiff filed this *pro se*[1] action against his former employer in federal district court for

---

[1] The Court notes that this *pro se* Plaintiff is no stranger to the litigation process or the federal rules of procedure.  Plaintiff represented to the Court at the hearing on this matter that he has completed two years of law school.  His familiarity with the federal rules and procedure is evident in his

1

wrongful termination, asserting a claim under the Michigan Whistleblower Protection Act, Mich. Comp. Laws §§ 15.363 *et seq*. The Complaint includes a number of additional state law claims. On his civil cover sheet, Plaintiff indicated that the basis for jurisdiction was diversity and check marked the box that indicated that Plaintiff was a citizen of Michigan and Defendant[s] was a citizen of another state. In his Complaint, Plaintiff does not allege citizenship but alleges that at the time of filing the Complaint, he was a resident of Michigan, living in Washtenaw County.

On the basis of the facts alleged in the Complaint and on the civil cover sheet, Defendants, some of whom are Michigan residents, filed a motion to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter diversity jurisdiction. In response to Defendants' motion, Plaintiff responded that he had made a technical error in completing the civil cover sheet, that his Complaint alleged only his residence, not his citizenship, and that Plaintiff was a citizen of Virginia at the time he instituted this action because: (1) he still paid taxes in Virginia; (2) he was registered to vote in Virginia; (3) his automobiles were insured in Virginia; (4) he never sold or listed his Virginia home, where his wife and pets still live, for sale; (5) he never opened a Michigan bank account.

Defendants replied that under the applicable tests of domicile, Plaintiff was a Michigan

---

multiple filings, as well as his references at oral argument to multiple sources of relevant authority. In the instant matter alone, Plaintiff has filed (1) a motion to amend his Complaint, (2) an amended Complaint, (3) two motions for sanctions, (4) a motion to strike and (5) a motion to redact certain financial information. Plaintiff also is currently engaged in litigation, again *pro se*, against his former employer, the FDA, in the United States District Court for the District of Maryland where he has demonstrated a similar proficiency with the tools of the litigation process. At the hearing on Defendants' motion to dismiss, Plaintiff also impressed the Court with his substantive knowledge on several points, often directing the Court's attention to pertinent court rules and legal authority. In particular, as discussed *infra*, Plaintiff demonstrated an acute awareness of the legal implications of a permanent residency exemption affidavit that he executed in connection with purchasing his Michigan home. Plaintiff has demonstrated that he is more than adequately equipped to represent himself vigorously in this matter.

citizen, and not a citizen of the State of Virginia, on October 12, 2010, the date he filed his Complaint, because Plaintiff: (1) constructed and purchased a home in Michigan, (2) voluntarily executed, filed with the State of Michigan and did not rescind a "Principal Residence Exemption Affidavit" which admits that Michigan is Plaintiff's "permanent home" - "the place to which [he] intend[s] to return to whenever [he] go[es] away;" (3) filed a 2010 W-4 Withholding Certificate with the State of Michigan listing his Ann Arbor address; (4) continued to use his Michigan mailing address for his court proceedings, both in this action and in litigation against another former employer in the United States District Court, District of Maryland; (5) moved to and now resides and works in Madison, Wisconsin, not Virginia; (6) did not list his Michigan home for sale until October 21, 2010, after filing the instant Complaint; and (7) searched for jobs in thirteen different states following his termination, none of which was Virginia, where Plaintiff conceded there was no work commensurate with his education and training.

## I.     FACTUAL BACKGROUND

Plaintiff began employment with Defendant Terumo Heart, Inc. ("THI") effective March 29, 2010. (Compl. ¶ 14; Dkt. No. 12, Defs.' Reply Ex. 2, Letter of Employment.) THI manufactures a cardiac device that assists patients in late-stage heart failure who are either waiting for or cannot accept a heart transplant. Plaintiff was to serve as THI's Regulatory Affairs Manager under an at-will contract of employment. (Defs.' Reply Ex. 2.) Under his contract of employment with THI, Plaintiff agreed to reside in Michigan and was eligible for $30,000 in relocation expenses to assist with moving to the Ann Arbor, Michigan area. (*Id.*)

In April, 2010, Plaintiff began construction of a new home in Dexter, Michigan and on June 30, 2010, purchased the home at 8106 Gingko Way, Dexter, Michigan in Washtenaw, County.

(Defs.' Reply, Ex. 2; Dkt. No. 10, Chang Lim Affidavit in Support of Opposition to Motion to Dismiss, ¶ 1.)  On or about October 1, 2010, Plaintiff was terminated by THI, filed the instant law suit on October 12, 2010 and on or about October 21, 2010, notified his real estate agent that he wanted to sell his home.  (Dkt. No. 28, Amended Mot. for Sanctions, Exs. D and E.)  According to Plaintiff's relocation expense reports, Plaintiff moved to Michigan on or before September 14, 2010, claiming expenses relating to moving his family and himself to his Dexter address.  (Defs.' Reply, Ex. 2, p. 23.)

Plaintiff claims that the following jurisdictional facts establish that he was at all times relevant to this lawsuit, and remains, a Virginia resident:

- Plaintiff continues to own a home in Virginia.  (Dkt. No. 10, Ex. 1, Affidavit of Chang Lim, ¶ 2.)

- Plaintiff's family resides in Floyd County, Virginia.  (*Id*. ¶ 4.)

- Plaintiff has kept his Virginia Driver's license.  (*Id*. ¶ 5.)

- Plaintiff's vehicle remains registered in Virginia. (*Id*. ¶ 6.)

- On or about September 9, 2010, after accepting employment in Michigan and building his new home here, Plaintiff was sworn in as a United States Citizen in the United States District Court for the Western District of Virginia.  (*Id*. ¶ 7.)

- Plaintiff maintained his medical health insurance from Virginia and did not purchase the health insurance offered by THI. (Dkt. No. 28, Pl.'s Mot. Sanctions, 12.)

- Plaintiff's Michigan bills (DTE, Comcast, tax forms) have all been addressed to or forwarded to his Virginia address.  (*Id*.)

- Plaintiff has filed with the United States Post Office an address change to his Virginia address.  (*Id*.)

- Plaintiff is entitled to file for unemployment insurance benefits in Virginia.  (*Id*.)
- Plaintiff has declared ownership of tangible personal property in Floyd, County

4

>   Virginia.  (*Id*. Ex. F.)

Defendants do not dispute these factual contentions, but argue that notwithstanding these facts, Plaintiff is a Michigan citizen for purposes of diversity.  They offer the following facts in support:

- Plaintiff alleged in his Complaint that he is a Michigan resident.  (Compl. ¶ 2.)

- Plaintiff indicates on his Civil Cover Sheet that the basis for this Court's jurisdiction is diversity of citizenship and indicates that he is a citizen of Michigan and Defendant is a citizen of another state.  (Dkt. No. 1, p. 20.)

- Plaintiff signed an offer letter with THI in which he agreed to relocate to Michigan as condition of his employment with THI.  (Dkt. No. 12, Defs.' Reply Br. Ex. 2.)

- Plaintiff constructed and purchased a new home in Dexter, Michigan.

- In connection with the financing of his home, Plaintiff signed and filed with the State of Michigan a Principal Residency Exemption ("PRE") Affidavit, indicating that his Michigan home was his principal residence, which is defined for purposes of the PRE Affidavit as "the one true place where a person has his or her true, fixed, and permanent home to which, whenever absent he or she intends to return and that shall continue as a principal residence until another principal residence is established."  (Dkt. No. 34, Defs.' Resp. to Mot. to Strike.)

- Plaintiff completed a Form W-4 for purposes of THI withholding and listed an Ann Arbor, Michigan address.  (*Id*. Ex. 3.)

- Plaintiff indicated his 8106 Gingko Way, Dexter, Michigan address when he filed his opposition to the instant motion.  (*Id*. Ex. 4.)

- Plaintiff used the 8106 Gingko Way address to register his *pro se* e-filing account on December 2, 2010.  (*Id*. Ex. 5.)

- Plaintiff used his 8106 Gingko Way home address for recent filings with the United States District Court, District of Maryland, in Plaintiff's lawsuit against his former employer.  (*Id*. Ex. 7.)

- Plaintiff has alleged that he is looking for employment in ten (10) states other than Michigan and none of them is Virginia.  (Dkt. No. 29, Defs.' Supp.

>    Reply, 3.)

- Plaintiff has now changed his address with this Court to Wisconsin and he now resides and has obtained employment in Madison, Wisconsin. (Dkt. No. 13, Plaintiff's Notice of Change of Address.)

## II.    ANALYSIS

### A.    The Court's Diversity Jurisdiction and Determination of Domicile

Title 28 U.S.C. § 1332 authorizes district courts to exercise diversity jurisdiction only when there is complete diversity of citizenship, which exists only when no plaintiff and no defendant are citizens of the same state. *Napletana v. Hillsdale College*, 385 F.2d 871, 872 (6th Cir. 1967). For a federal district court to exercise jurisdiction on the basis of diversity of citizenship, complete diversity between the parties must exist at the time the complaint is filed. 28 U.S.C. § 1332. *See also*, *Napletana*, 385 F.2d at 872. The "party 'seeking to bring a case into federal court carries the burden of establishing diversity jurisdiction.'" *Coyne ex rel. Ohio v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir.1999) (quoting *Certain Interested Underwriters at Lloyd's v. Layne*, 26 F.3d 39, 41 (6th Cir.1994)).

For purposes of determining citizenship in a diversity case, the concept of citizenship is synonymous with domicile. "State citizenship for the purpose of the diversity requirement is equated with domicile." *Von Dunser v. Aronoff*, 915 F.2d 1071, 1072 (6th Cir. 1990). A person retains an established domicile until a new one is clearly obtained by the establishment of "residence in the new domicile, and the intention to remain there." *Id.* "'A citizen of the United States can change his domicile instantly. To do so, two elements are necessary. He must take up residence at the new domicile, and he must intend to remain there. Neither the physical presence nor the intention to remain is alone sufficient.'" *Napletana,* 385 F.2d at 872 -873 (quoting C. WRIGHT,

HANDBOOK OF THE LAW OF FEDERAL COURTS § 26 (1963)). *See also Deasy v. Louisville & Jefferson County Metropolitan Sewer District*, 47 F. App'x 726, 728 (6th Cir. 2002) ("To acquire a domicile within a particular state, a person must be physically present in the state and must have either the intention to make his home there indefinitely or the absence of an intention to make his home elsewhere.").

"The district court has broad discretion to determine the manner in which the issue of domicile will be considered. The judge may decide the question on the basis of the pleadings, affidavits of the parties or nonparties, available depositions, and other evidentiary materials, or he or she may call for a full evidentiary hearing to receive additional testimony." Wright, Miller & Cooper, Federal Practice & Procedure § 3612 (3d ed 2009). Where citizenship is contested, the district court must make a factual determination, conducting an evidentiary hearing when necessary to ascertain the relevant facts. *Von Dunser*, 915 F.2d at 1075-1076. "In all cases, the relevant determination is the citizenship of the parties as of [] the date of the complaint." *Id.* at 1076. *See also Farmer v. Fisher*, 386 F. App'x 554, 557 (6th Cir. 2010) ("Diversity for the purpose of subject matter jurisdiction is determined as of the time of the filing of a lawsuit."). "Changes in a party's domicile after commencement of the action or its removal are irrelevant." Wright, Miller & Cooper, Federal Practice and Procedure § 3612.

Diversity of citizenship must be apparent from the face of the complaint but a plaintiff may file an amended complaint curing any defects and sufficiently alleging facts in support of jurisdiction. *Lozar v. Birds Eye Foods, Inc.*, No. 09-cv-10, 2009 WL 1441584 at * 3 (W.D. Mich. May 18, 2009). *See also* Wright, Miller & Cooper § 3602.1 ("[N]oncompliance with the pleading requirement or a defective allegation of subject matter jurisdiction may be corrected by an

7

amendment under the liberal provisions of Federal Rule 15.") A defective allegation as to a jurisdictional fact will not operate to defeat diversity where the actual facts support a finding of diversity. *Homfeld II, L.L.C. v. Comair Holdings, Inc.*, 53 F. App'x 731, 732-733 (6th Cir. 2002) (permitting appellant to file a proper amendment in the court of appeals to cure defective allegations of citizenship).

"A domicile is distinguished from a residence by the permanency and scope of a party's presence at either location. It is the place where a person dwells and which is the center of his domestic, social, and civil life." *Bateman v. DuPont De Nemours & Co.*, 7 F. Supp. 2d 910, 912 (E.D. Mich. 1998) (internal quotation marks, citations and emphasis omitted). Courts frequently take into account the following factors as bearing on the issue of a party's domicile: "the party's current residence; voter registration and voting practices; situs of personal and real property; location of brokerage and bank accounts; membership in unions, fraternal organizations, churches, clubs, and other associations; place of employment or business; driver's license and automobile registration; payment of taxes." Wright, Miller & Cooper, § 3612. Obtaining employment, purchasing a home, changing one's address with the United States Postal Service, opening a bank account, were held to be sufficient to establish domicile in *Fleming v. Fed Ex Freight East, Inc.*, No. 06-11275, 2006 WL 2038618 at * 1 (E.D. Mich. June 23, 2006) (finding that a previously Michigan domiciled individual became a California citizen when he moved to California, bought a home, changed his address and opened a bank account). Similarly, in *Roehm v. Wal-Mart Stores, Inc.*, No. 07-10168, 2007 WL 1650701 at * 1-2 (E.D. Mich. 2007), the court concluded that accepting employment, purchasing a home and moving one's family were indicative of an intent to remain in the state of residence and sufficient to establish domicile. In *Roehm*, plaintiff brought suit against

8

her former employer in Oakland County Circuit Court for wrongful termination of employment. Defendant, an Arkansas corporation, removed the case to federal court on the basis of diversity jurisdiction claiming that plaintiff was a citizen of Michigan. Plaintiff filed a motion to remand to state court, claiming that she and defendant were both citizens of Arkansas at the time the complaint was filed and therefore the court lacked subject matter jurisdiction. 2007 WL 1650701 at * 1. The court held that by accepting employment with the defendant in Arkansas, purchasing a home Arkansas, having her husband and two children move to Arkansas, enrolling her two children in Arkansas schools, and registering the family vehicles in Arkansas, plaintiff had established that she had changed her domicile from Michigan to Arkansas. The court found that plaintiff had changed her domicile despite defendant's contention that "[p]laintiff viewed the job in Arkansas as a stepping stone to another opportunity, and always intended to return to Michigan." *Id*. at * 2. Defendant relied on a statement in plaintiff's complaint that she had "temporarily relocated" her family to Arkansas from Michigan. Plaintiff explained that this statement reflected her situation after she was terminated by defendant because she was unable to find work in Arkansas and thus, in hindsight, the relocation of her family there was temporary. *Id*. at *2. The court found that despite this ad hoc statement in her pleading, plaintiff manifested a clear intent to move to Arkansas and remain there indefinitely when she accepted employment with defendant and, among other things, moved her family and registered her children in school. Concluding that the facts did not establish that plaintiff "intended to return to Michigan after a temporary period of employment with Defendant," the court held:

> On balance, the facts in this case show that Plaintiff established a domicile in Arkansas. Although Plaintiff retains a Michigan driver's license and bank account, she purchased a house in Arkansas, listed her Michigan house for sale, moved her family to Arkansas, registered her vehicles in Arkansas, and used her Arkansas

>  address to submit her income tax returns. These facts show that Plaintiff intended to remain in Arkansas indefinitely, and established a domicile there. Thus, both Plaintiff and Defendant are citizens of Arkansas, and the Court does not have diversity jurisdiction.

2007 WL 1650701 at * 2.

### B. Plaintiff Established a Michigan Domicile

Unquestionably, at the time of filing in the instant case, some of the standard indicia of Plaintiff's citizenship remained Virginia-based. For example, Plaintiff claims that he: (1) still possesses a Virginia driver's license; (2) has his personal cars registered and insured in Virginia; (3) has filed his taxes in Virginia; (4) had a United States Passport issued on September 23, 2010 that showed his Virginia address; (5) maintains his medical and health insurance in Virginia; (6) maintains his Virginia bank accounts; and (7) still has a home and family living in Virginia.

Defendants do not dispute that any of this true. They argue, however, that Plaintiff's Michigan citizenship was acquired when Plaintiff accepted employment in Michigan, built and purchased a home here and expressed his clear intent at that time to make Michigan his domicile, signing and filing with State of Michigan a PRE affidavit expressing that he intended to make Michigan his "permanent residence," that place "to which he always intended to return." This is the very definition of "domicile" by which this Court is to measure Plaintiff's intent. At the time he filed the instant Complaint, Plaintiff had not rescinded his PRE request. Although, as Plaintiff astutely pointed out to the Court, Plaintiff never actually qualified for the Michigan PRE because he continued filing taxes as a Virginia resident, this *post hoc* legal disqualification for the exemption cannot alter the true nature of Plaintiff's intent when he executed this document on June 30, 2010. Rarely is there such a clearly expressed of intention to make one's residence ones's domicile as Plaintiff expressed in signing this PRE, which he had not rescinded at the time he filed the instant

10

Complaint.

"When the two required elements of physical presence and intention to remain concur, the new domicile is established. It will be considered valid for the period during which the new domicile continues even if it is abandoned only a short time later. The quick termination of a claimed newly acquired domicile, of course, would be evidence that an intention to remain never may have existed. But, if a bona fide establishment of a new domicile is proven, the motive for its acquisition and the length of the duration of that domicile become irrelevant." Wright, Miller, and Cooper § 3613. On and before June 30, 2010, Plaintiff clearly expressed his intent to make his newly-constructed Dexter home his permanent residence, the place to which he then always planned to return. He accepted thousands of dollars in relocation expenses from Defendants, some of the expenses expressly dedicated to moving himself and his family. Clearly, were the shoe on the other foot, i.e. had Plaintiff had a need to establish Michigan citizenship for some other purpose subsequent to his hiring but prior to his termination on October 1, 2010, he would have had a very compelling case that Michigan was then his domicile, despite the lingering evidence of citizenship in Virginia. "[A] litigant is not required to state—or even have—an intention to stay permanently at the new residence. Such a demanding requirement would prevent a significant portion of our mobile population from acquiring a new domicile. It is sufficient if the individual intends to remain at the new home for an indefinite period into the future." *Id*.

The Court finds that Plaintiff did form the requisite intent to remain in Michigan and to make Michigan his permanent home at the time he built and purchased his Dexter home and began his employment with Defendant. The fact that ultimately things did not go as planned for Plaintiff does not change the fact that he acquired Michigan citizenship through this undisputed confluence of

residency and intent to remain.

### C.     Plaintiff Did Not Change His Michigan Domicile Prior to Filing This Action

A person can have only one domicile for diversity purposes at a particular time. The Court has concluded that Plaintiff became a Michigan domicile when he accepted employment in Michigan, constructed, purchased and claimed his Michigan residence as his permanent residence and accepted thousands of dollars of reimbursement in relocation expenses for himself and his family. His Michigan domicile having been established, the question for the Court is whether, on October 12, 2010, at the time of the filing of the instant Complaint, Plaintiff had changed his Michigan citizenship by forming the intent to make Virginia his new domicile – the place where he then intended always to return. Plaintiff concedes that following his termination he began looking for employment in 13 different states, none of which was Virginia because no jobs were available in Virginia suitable to Plaintiff's education and employment. In fact, Plaintiff now resides and works in Madison, Wisconsin.

"A so called 'floating intention' or vague possibility to move on or even to return to a former domicile at some undetermined future time will not defeat the acquisition of a new domicile for diversity jurisdiction purposes if the intent to remain at the domicile seems genuine to the court." *Id.* Wright, Miller, and Cooper, Federal Practice and Procedure § 3613 (citing *Gilbert v. David*, 235 U.S. 561, 569 (1915)). These basic principals of domiciliary intent were cogently summarized in *Hardin v. McAvoy*, 216 F.2d 399, 402-403 (5th Cir. 1954):

> There is substantial concurrence in the correctness of the negatively stated proposition that it is the absence of an intention to go elsewhere which is controlling. It is enough to intend to make the new state one's home. It is not important if there is within contemplation a vague possibility of eventually going elsewhere, or even of returning whence one came. If the new state is to be one's home for an indefinite period of time, he has acquired a new domicile. Finally, it is the intention at the time

12

> of arrival which is important. The fact that the plaintiff may later have acquired doubts about remaining in her new home or may have been called upon to leave it is not relevant, so long as the subsequent doubt or the circumstance of the leaving does not indicate that the intention to make the place the plaintiff's home never existed.
>
> Finally, it must be kept in mind that a person may not have two domiciles, two citizenships, at the same time, and that while intention and presence when joined are significant and important elements, a mere detached, indefinite and ambulatory future intention to possibly or probably effect a change of domicile, not attached to and fixed at a particular residence at a particular place and time is of no real significance. Thus it is settled law that when present intention and place of residence conjoin, a mere indefinite or future intention to choose some other domicile at some indefinite time in the future, cannot divest a present domicile to confer another.
>
> While the cases dealing with questions of citizenship and domicile are legion, and because they are, discrepant statements have sometimes crept into some of the opinions, those that speak with authority speak with one voice on the point at issue here. If, therefore, the shoe were on the other foot, and plaintiff, sued in Florida, were seeking to defeat jurisdiction with the claim that, because he intended some day to return to Georgia, he was a citizen, not of Florida, but of Georgia, he would certainly, in the face of the undisputed testimony in this case, be unable to do so.

216 F.3d at 402-403 (internal citations and quotation marks omitted).

## III.  CONCLUSION

The Court concludes that Plaintiff has not carried his burden of establishing that he formed the specific intent, before filing his Complaint on October 12, 2010, to abandon his Michigan domicile and to make Virginia his new permanent home.[2]  Plaintiff is not without recourse against

---

[2] Plaintiff has filed several motions over the course of the last two months, which the Court resolves as follows:

(1) On February 28, 2011, Plaintiff filed a "Motion for Sanctions and to Vacate the Court's Order and the Hearing Set for March 16, 2011." (Dkt. No. 28.)  In this filing, Plaintiff attempted to further rebut much of the evidence that Defendants submitted to the Court in their reply to Plaintiff's opposition to Defendants' motion to dismiss.  In this filing, Plaintiff insists that his checking the wrong box on his civil cover sheet was merely a technical error and that Defendants' knew this and should therefore be sanctioned for filing the motion to dismiss.  The Court has in no way relied on Plaintiff's alleged technical error on his civil cover sheet in reaching the conclusion in this matter.  The Court has considered all of the evidence that Plaintiff has proffered and has ruled

Defendants and is free to pursue his claims in the appropriate court. The Court GRANTS Defendants' Motion to Dismiss and DISMISSES Plaintiff's Complaint with prejudice.

IT IS SO ORDERED.

                    S/Paul D. Borman
                    PAUL D. BORMAN
                    UNITED STATES DISTRICT JUDGE

Dated: April 28, 2011

## CERTIFICATE OF SERVICE

Copies of this Order were served on plaintiff and the attorneys of record by electronic means or U.S. Mail on April 28, 2011.

                    S/Denise Goodine
                    Case Manager

---

without regard to the information on the civil cover sheet. The Court DENIES Plaintiff's motion for sanctions (Dkt. No. 28).

    (2) The Court also DENIES Plaintiff's motion to strike Defendants' supplemental brief, which Plaintiff moves to strike because allegedly Defendants did not seek concurrence before filing their supplemental brief. (Dkt. No. 30). Even assuming that Defendants' counsel violated Rule 11 by failing to seek concurrence, which Defendants' counsel denies, Defendants cured any such violation in a timely fashion pursuant to Fed. R. Civ. P. 11(c)(2).

    (3) The Court also DENIES Plaintiff's most recent motion for sanctions (Dkt. No. 39) which accuses Defendant's of misrepresenting to the Court that Plaintiff had opened a checking account at a Bank of America branch in Michigan. The Court did not so interpret Defendants' filing, and in any event did not rely on this information in any way in reaching its conclusion in this matter.

    (4) The Court GRANTS Plaintiff's motion to redact certain financial information from documents filed with the Court. (Dkt. No. 38.) The Court will direct the Clerk of the Court to redact the financial account information contained in Dkt. Nos. 36-2, 36-8 and 37-3 by sealing those documents.